IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DERRICK WRIGHT,

    Plaintiff,

v.                                                      CASE NO. 4:13-cv-415-MW-GRJ

RONALD SOLORZANO, M.D., et al.,

    Defendants.

_____/

## REPORT & RECOMMENDATION

Pending before the Court is Defendants' Motion for Summary Judgment, ECF No. 130.  Plaintiff has filed a response in opposition, ECF No. 133, and therefore the motion is ripe for review.  For the reasons discussed below, the undersigned recommends that Defendants' motion be granted.

### I. Plaintiff's Allegations

Plaintiff is an inmate in the custody of the Florida Department of Corrections ("DOC"), currently housed at Jefferson Correctional Institution. On April 2, 2015, Plaintiff initiated this action by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983, naming four defendants whose actions allegedly violated Plaintiff's Eight Amendment right to adequate medical care. (ECF No. 100 at 1, 7.)

Specifically, Plaintiff claims that upon his arrival into the custody of the DOC at South Florida Reception Center ("SFRC") on June 22, 2010, he informed medical staff of his ongoing medical condition—Lipoma in the right cheek—and that treatment was

necessary. (*Id.* at 5.) Plaintiff states that medical staff submitted a medical referral and a response was issued concerning referral. (*Id.*)

On August 23, 2010, while housed at Okeechobee Correctional Institution ("OKC"), Plaintiff was advised that he had been denied referral for operation by approving authorities. (*Id.*) Another medical referral was resubmitted that same day to be seen by a specialist. (*Id.*)

On or about November 18, 2010, Plaintiff was escorted to SFRC to be seen by a specialist, Orlando Llorente, M.D. ("Dr. Llorente"), who submitted a medical referral for a CT scan to be performed. (*Id.*) Plaintiff was also taken to SFRC on December 14, 2010, and housed there for medical purposes concerning his condition. (*Id.*)

Plaintiff was transported to Kindal Regional Hospital for a CT scan on January 18, 2011, and while there, a specialist and his colleague informed Plaintiff of Lipoma and its likelihood of growing over the course of time. (*Id.* at 6.) According to Plaintiff, they told Plaintiff that he needed surgery, which would enable him to appropriately chew his food. (*Id.*) Plaintiff alleges that on February 28, 2011, he met with a specialist who would perform the excision and an advised order of excision was supposed to be submitted. (*Id.*)

Plaintiff states that he returned to OKC on April 12, 2011, and consulted with the chief doctor on April 20, 2011. (*Id.*) Plaintiff was allegedly told that Defendants denied the February 28, 2011 and March 2, 2011 recommendations for excision. (*Id.*) On April 25, 2011, Plaintiff utilized the grievance procedure, thereby appealing to the central office as to the reason for his denial. (*Id.*)

Three weeks before November 15, 2011, Plaintiff resubmitted a referral for reconsideration, and was then transferred back to SFRC and seen by a specialist who resubmitted a recommendation for excision. (*Id.*) On December 21, 2011 Plaintiff was informed that he had been denied surgical treatment on December 2, 2011. (*Id.*)

Plaintiff alleges that on January 4, 2012 he consulted with a doctor at SFRC and was told that recommendation for excision had been denied without any further explanation other than the doctor's opinion that it might have been due to being cosmetic. (*Id.* at 6a.)

Plaintiff claims he was then seen by medical staff on March 30, 2012, and that Dr. Llorente was going to provide an update on Plaintiff's condition. (*Id.*) According to Plaintiff, a response confirmed that his condition was medically necessary. (*Id.*)

Plaintiff alleges that Defendant Ronald Solorzano, M.D. ("Dr. Solorzano"), and Defendant William Neilds, M.D. ("Dr. Neilds"), violated Plaintiff's Eighth Amendment right to adequate medical care by acting "with deliberate indifference in denying or refusing to make surgical payments for treatment diagnosed by [a] physician requiring medical attention in their professional and personal capacity, causing an undue delay in Plaintiff's serious medical need for excision[.]" (*Id.* at 6a-7.) Plaintiff seeks compensatory and punitive damages. (ECF Nos. 115, 118.)[1]

---

[1] Plaintiff's Fourth Amended Complaint requests compensatory damages in the amount of $100.00, punitive damages in the amount of $100.00, and nominal damages in the amount of $1.00. (ECF No. 100 at 7.) However, Plaintiff subsequently filed a motion for leave to amend or correct the monetary damages requested in his fourth amended complaint to request compensatory damages in the amount of $100,000, and punitive damages in the amount of $100,000. (ECF No. 115.) The Court granted

## II. Defendants' Summary Judgment Evidence

*Utilization Management*

According to Defendants, Utilization Management ("UM") is responsible for determining whether there is a medical necessity for patients within the DOC to receive specialty treatment. (ECF No. 130 at 5; ECF No. 130-6 ¶ 3; ECF No. 130-7 ¶ 3.) Institutional clinicians who believe a patient needs more treatment or a specialist will submit a request for a specialist to the CHO for the institution, who will approve or deny the request. (*Id.*) Complex medical issue requests approved by a CHO and sent to UM are reviewed by a physician advisor at UM, who then approves or denies the request or requests more information. (*Id.*) If the request is deemed not medically necessary, the CHO is advised that the request can be reconsidered at any time if the CHO believes the procedure is necessary. (*Id.*)

*Lipomas*

A lipoma is a growth of fat cells in a thin, fibrous capsule found below the skin. (ECF No. 130 at 5; ECF No. 130-6 ¶ 5; ECF No. 130-7 ¶ 4.) Lipomas are the most common noncancerous soft tissue growth and generally do not cause pain and are treated conservatively unless medical complications arise from the growth. (*Id.*) Lipomas can be bothersome when their location or increased size becomes painful or tender, and surgery is generally a last resort. (ECF No. 130 at 5; ECF No. 130-6 ¶¶ 5-6;

---

Plaintiff's motion and did not require him to re-file a corrected Fourth Amended Complaint, instead amending the Fourth Amended Complaint by interlineation. (ECF No. 118.)

ECF No. 130-7 ¶¶ 4-5.)

*Medical Care Received for Plaintiff's Lipoma*

Plaintiff reported his lipoma upon entering prison in June 2010, which he allegedly had since 2007. (ECF No. 130 at 6; ECF No. 130-6 ¶ 4; ECF No. 130-7 ¶ 4.) Plaintiff was transferred to Okeechobee CI on July 6, 2010, and saw ARNP Bass on July 13, 2010, who noted that they wanted to get medical records from Plaintiff's private physician before asking for any consults. (ECF No. 130 at 6; ECF No. 130-3 at 5-7; ECF No. 130-5 ¶ 4.) Plaintiff was provided Motrin and set for a follow-up appointment. (ECF No. 130 at 6.; ECF No. 130-3 at 5-7; ECF No. 130-5 ¶ 4.) Okeechobee CI CHO Dr. Bhadja saw Plaintiff on July 29, 2010, and indicated that the requested records had not been received so Plaintiff should return to the clinic in two weeks. (ECF No. 130 at 6; ECF No. 130-3 at 9; ECF No. 130-5 ¶ 5.) Plaintiff subsequently declared a medical emergency related to his lipoma on August 6, 2010, but considering he was scheduled to see the doctor on the upcoming Monday, Plaintiff was provided ice and Motrin. (ECF No. 130 at 7; ECF No. 130-3 at 9-11; ECF No. 130-5 ¶ 6.)

On August 9, 2010, Plaintiff saw Dr. Bhadja and complained of no pain but demanded surgery. (ECF No. 130 at 7; ECF No. 130-3 at 12.) Dr. Bhadja submitted a consult request for Plaintiff to see an oral surgeon, noting that the lipoma was smooth, soft, and 3/4 by 3/4 in size with no history of pain. (ECF No. 130 at 7; ECF No. 130-3 at 12-14; ECF No. 130-5 ¶ 7.)

On August 12, 2010, UM denied the request for Plaintiff to see an oral surgeon. (ECF No. 130 at 7; ECF No. 130-3 at 14.) Dr. Solorzano determined that it was not a

medical necessity for Plaintiff to see an oral surgeon based on his review of the records provided, and determined that there was no reason for excision at that time because there was no reported history of pain or interference with other functions and the condition appeared to be stable. (ECF No. 130 at 7; ECF No. 130-6 ¶ 7.) Accordingly, Dr. Solorzano sent Dr. Bhadja a letter denying the request and indicated that a request for reconsideration could be submitted at any time if Plaintiff's treating physician believed that the surgery was warranted. (ECF No. 130 at 7; ECF No. 130-4 at 6.) On August 23, 2010, Dr. Bhadja informed Plaintiff that his request had been denied.(ECF No. 130 at 7; ECF No. 130-3 at 17; ECF No. 130-5 ¶ 8.)

Although Plaintiff's condition was unchanged, ARNP Bass resubmitted a surgical consult request on October 22, 2010, requesting a routine appointment with a general surgeon, which stated that the lipoma was "disfiguring" and the Plaintiff complained of discomfort. (ECF No. 130 at 8; ECF No. 130-3 at 23-24; ECF No. 130-5 ¶ 9.) This time Plaintiff's request was approved and Plaintiff saw the surgeon, Dr. Kiliddjian, on November 18, 2010, who recommended that the lipoma be excised by a plastic surgeon even though there was no drainage, no pain, and the growth was asymptomatic. (ECF No. 130 at 8; ECF No. 130-3 at 24-25; ECF No. 130-5 ¶ 9.) A CT-scan was completed on January 18, 2011, that showed a large, fatty mass on the right cheek with no damage to the facial bones and well-aerated paranasal sinuses with no evidence of destruction to the adjacent mandible. (ECF No. 130 at 8; ECF No. 130-3 at 38-39; ECF No. 130-5 ¶ 11.) Following Plaintiff's CT-scan, another consult was submitted for an appointment with a plastic surgeon, and Plaintiff was seen by Dr.

Llorente on February 28, 2011, who recommended excision and a consult request for general surgery was submitted. (ECF No. 130 at 8; ECF No. 130-3 at 41-45; ECF No. 130-5 ¶ 12.) Dr. Hossenini, CHO at SFRC— where Plaintiff was assigned at the time— denied the consult, stating that there was no malignancy associated with the mass and removal was "mostly plastic and cosmetic." (ECF No. 130 at 8; ECF No. 130-3 at 43-45; ECF No. 130-5 ¶ 12.)

Another consult request was submitted for surgery on November 22, 2011, which was denied on December 16, 2011 by Dr. Nields because the lipoma did not interfere with function, Plaintiff did not report chronic pain, headaches, or earaches, and there were no records demonstrating that the lipoma was growing in size. (ECF No. 130 at 9; Ecf No. 130-3 at 61-63; ECF No. 130-5 ¶ 13; ECF No. 130-7 ¶ 8.) However, Dr. Nields requested that Dr. Hossenini continue to document the size of the lipoma and noted that he may request reconsideration at any time. (ECF No. 130 at 9; ECF No. 130-4 at 22; ECF No. 130-7 ¶ 9.)

Plaintiff was informed of the denial on December 22, 2011, at approximately 2:30 p.m. and approximately four hours later, Plaintiff reported to medical complaining of an earache in his right ear, which he stated had been ongoing for three days. (ECF No. 130 at 9-10; ECF No. 130-3 at 64-67; ECF No. 130-7 ¶ 11.) There is also some evidence that at some time Plaintiff began reporting of pain and difficulty swallowing. (ECF No. 130 at 10; ECF No. 130-5 ¶ 15.)

After further communication with Dr. Llorente, UM ultimately approved the surgery in March 2012 because the complications reported by Plaintiff met the

threshold for medically necessary surgery. (ECF No. 130 at 10; ECF No. 130-3 at 85; ECF No. 130-4 at 23-24; ECF No. 130-5 ¶ 14.) Plaintiff's lipoma was subsequently removed without complications on August 7, 2012. (ECF No. 130 at 10; ECF No. 130-3 at 86-87; ECF No. 130-5 ¶ 14.)

### III. Plaintiff's Summary Judgment Evidence

Plaintiff's general time line of events follows that asserted by Defendants outlined above. However, Plaintiff claims that when he was seen by ARNP Bass on July 13, 2010, he reported health problems that he believed were caused by the lipoma, including frequent headaches. (ECF No. 133.) Plaintiff submitted a copy of his formal grievance complaint filed on September 28, 2010, which noted that Plaintiff has pain, often with migraine headaches and stiffness of the jaw, as well as sometimes having blood-like tastes in his mouth. (*Id.* at 17.)

### IV.  Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue

of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001.)

## V. Discussion

### A.  *Eleventh Amendment Immunity*

Defendants first request the court to enter for summary judgment in their favor alleging that they are immune from suit in their official capacities. Plaintiff offers no opposition to Defendant's claim that Dr. Solorzano and Dr. Nields are immune from suit in their official capacities under the Eleventh Amendment. *See* ECF No. 133 at 5. Thus, there is no genuine issue of material fact regarding this matter.

As a matter of law, a suit against a state employee in an official capacity is a suit against the State for Eleventh Amendment purposes. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). In the absence of any waiver or express congressional authorization, the Eleventh Amendment prohibits a suit against a state in federal court. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Currently, there is no express congressional authorization, nor has Florida consented via waiver to be sued in damage suits brought under section 1983. *Gamble v. Florida Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509, 1543 (11th Cir. 1986); *see also Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994) ("Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court."). Therefore, as a matter of law, Defendants are immune from suit in their official capacities as employees of the State of Florida. Consequently, Defendants are entitled to Eleventh Amendment immunity from damages.

### B.   Due Process Violation

Defendants next argue that Plaintiff has failed to state a claim for a due process violation. Plaintiff offers no objections to Defendant's argument. *See* ECF No. 133 at 6. As Defendants point out, the only mention of a due process violation in Plaintiff's fourth amended complaint is in his request for relief, which asks for $1.00 in nominal damages "for violating Plaintiff's due process rights." (ECF No. 100 at 7.)

A litigant must provide factual allegations in support of his claims to raise the right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Failure to do so will result in a dismissal of the complaint. *Id.*

In this case, because Plaintiff has failed to allege any facts whatsoever that lend insight as to how his due process rights were violated, Plaintiff has failed to adequately state a claim for a due process violation as a matter of law.

C.  *Eighth Amendment Violation*

Next, Defendants contend that Plaintiff cannot satisfy either the objective or subjective component required for a finding of deliberate indifference to a serious medical need to constitute an Eight Amendment violation.

The Eighth Amendment governs a prisoner's treatment in prison and his confinement conditions. *Farrow v. West*, 320 F.3d 1235, 1242 (11th Cir. 2003). "After incarceration, only the 'unnecessary and wanton infliction of pain' . . . constitutes cruel and unusual punishment prohibited by the Eighth Amendment." *Id.* (quoting *Ingraham v. Wright*, 430 U.S. 651, 670 (1977)). Not every claim of inadequate medical treatment constitutes an Eighth Amendment violation. *Id.* A plaintiff must show that a prison official's deliberate indifference to the plaintiff's serious medical needs constituted an unnecessary and wanton infliction of pain to prevail on an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To meet this standard, a plaintiff must satisfy both an objective and subjective inquiry. *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000). "First, a plaintiff must set forth evidence of an objectively serious medical need." *Farrow*, 320 F.3d at 1243 (citing *Taylor*, 221 F.3d at 1258; *Adams v. Poag*, 61 F.3d 1357, 1543 (11th Cir. 1995)). "Second, a plaintiff must prove that the prison official acted with an attitude of 'deliberate indifference' to that serious medical need." *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *McElligott v. Foley*, 182

F.3d 1248, 1254 (11th Cir. 1999); *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999)).

The record before the Court does not sufficient evidence of an objectively serious medical need. An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243. (citations omitted). In this case, three different doctors confirmed that lipomas generally do not require treatment. *See* ECF No. 130-5 ¶ 15; ECF No. 130-6 ¶¶ 5-6; ECF No. 130-7 ¶¶ 4-5.

Moreover, several courts have recognized that a lipoma is rarely a serious medical condition. *See Flores v. Welborn*, 119 F. App'x 6, 9 (7th Cir. 2004) (noting that even if the plaintiff had presented evidence that his lipoma should have been removed, it would have been at most a difference of medical opinion); *Maddrie v. Parekh*, No. 2:06-cv-566-FtM-29DNF, 2008 WL 2608105, at *4 (M.D. Fla. July 1, 2008) ("the evidence establishes that Plaintiff's lipoma does not constitute a serious medical condition"); *Glaze v. Hall*, No. 304-64, 2006 WL 360643, at *4 (S.D. Ga. Feb. 15, 2006) (noting that lipoma "requires little, if any, medical attention" and "would not be severe enough . . . to recover under Section 1983").

Plaintiff argues that he has demonstrated that his "medical need was serious, and diagnosed by a physician as requiring treatment, or so obvious that even a lay person would recognize the necessity for a doctor's attention." *See* ECF No. 133 at 7, 9. In support of this argument Plaintiff merely points to the fact that Dr. Solorzano and

Dr. Nields made the determinations that Plaintiff's condition was not medically necessary to require surgery without consulting with oral surgeons. *Id.* at 7. Plaintiff has not offered any evidence that his lipoma was a serious medical need such that it posed a substantial risk of serious harm. It is undisputed that Plaintiff saw at least one ARNP, two doctors, and one surgeon for his lipoma, and also had a CT scan performed on his lipoma. *See* ECF No. 133 at 2-4. Thus, the evidence of record fails to show an objectively serious medical need.

Second, assuming *arguendo*, that Plaintiff had demonstrated an objectively serious medical need, the evidence before the Court does not establish that Defendants acted with deliberate indifference. A showing of deliberate indifference requires three things: "(1) a subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Baez v. Rogers*, 522 f. App'x 819, 821 (11th Cir. 2013) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). The chosen course of treatment and decisions as to whether x-rays, additional diagnostic techniques, or other forms of treatment are necessary, are matters of medical judgment. *Estelle*, 429 U.S. at 107. There is no constitutional violation where an inmate and a prison medical official merely disagree as to the proper course of medical treatment. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Plaintiff does not assert, nor does he point to any evidence demonstrating that Defendants knew or should have known that excision was necessary and that Defendants delayed in providing treatment when they reasonably should have known

that such delay could be hazardous. *See Howell v. Evans*, 922 F.2d 712, 720 (11th Cir. 1991) ("In some cases, however, if an official knows or should know that certain treatment is necessary, and he delays in providing such treatment when he reasonably should know that such delay can be hazardous, his actions could constitute deliberate indifference."). Moreover, as previously noted, lipoma is rarely a serious medical condition that would require treatment, nor do Plaintiff's medical records suggest that he faced risk of serious harm unless the lipoma was removed.

If anything, Defendants actions might be construed at most as a failure to act instead of a refusal to act. The only issue in dispute is whether Plaintiff reported a history of pain or interference with functions on the two occasions Defendants denied Plaintiff's surgery consult requests. Defendants claim that on the two occasions Defendants denied Plaintiff's surgery consult requests, Defendant had not reported a history of pain or interference with functions, such as breathing or eating. *See* ECF No. 130-6 ¶ 7; ECF No. 130-7 ¶¶ 6,8.

Alternatively, Plaintiff claims he reported health problems, including frequent headaches, that he believed were caused by the lipoma to ARNP Bass on July 13, 2010, and that he submitted a grievance on September 28, 2010, complaining of pain, often with migraine headaches and stiffness of the jaw, as well as sometimes having blood-like tastes in his mouth. (ECF No. 133 at 2, 17.)

Nonetheless, even if Plaintiff's claims are true and he had reported a history of pain but Defendants failed to act, such would not constitute deliberate indifference. A failure to act does not constitute deliberate indifference. *See Howell*, 922 F.2d at 720 ("Such deliberate indifference is often manifest by a refusal to act when certain actions

were or should have been known to be necessary, rather than simply a failure to act."). In this case, Defendants did not refuse to act and instead told Plaintiff he could request reconsideration at any time. *See* ECF No. 130-4 at 6, 22. Moreover, "[s]elf-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)). "[W]hen a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989). Notably, although Plaintiff might not have received the surgery on his Lipoma as quickly as he would have liked, there is no dispute that Plaintiff received ongoing medical care for the Lipoma and ultimately received the surgery he desired.

In sum, there is no dispute on this record that prison medical officials have monitored, evaluated, and treated Plaintiff regarding his complaints stemming from his Lipoma. And more importantly, there is no evidence of record that Plaintiff has suffered any injury or damage from a denial or deficiency in medical care. Plaintiff's complaint asserts nothing more than his opinions regarding the chosen course of medical treatment proscribed by prison medical officials, and his opinions are insufficient to create a genuine issue of material fact to withstand Defendants' motion for summary judgment.

### D.   *Qualified Immunity*

Even if the Court were to find that Defendants had violated one of Plaintiff's constitutional rights, Defendants assert that they are entitled to summary judgment on Plaintiff's Eighth Amendment claim because they are protected by qualified immunity.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Andujar v. Rodriguez,* 486 F.3d 1199,1202 (11th Cir. 2007) (citations omitted); *Brandon v. Holt,* 469 U.S. 464, 472-73 (1985). Further, qualified immunity is only available in suits for damages. *See, e.g., Ashcroft v. al-Kidd,* 131 S.Ct. 2074, 2080 ("Qualified immunity shields federal and state officials from money damages"); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official wishing to invoke the affirmative defense of qualified immunity must have been acting within his discretionary authority. *Skop v. Atlanta,* 485 F.3d 1130, 1136 (11th Cir. 2007). If a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not proper. *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002).

There are two prongs to a qualified immunity test. The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir. 2004). The Supreme Court has held that lower courts are permitted to exercise discretion in deciding which prong of the test to address first. *Pearson v. Callahan,* 555 U.S. 223 (2009).

It is undisputed that Defendants were acting within their discretionary authority. Moreover, in light of the foregoing discussion, Plaintiff has failed to establish that Defendants violated a clearly established constitutional right because they did not deny him medical care act with a wanton disregard to Plaintiff's serious medical needs.

*Case No: 4:13-cv-415-MW-GRJ*

Accordingly, Defendants are entitled to qualified immunity from damages.

### E. *Punitive Damages*

In his complaint and response in opposition to summary judgment, Plaintiff seeks to recover punitive damages. A plaintiff must show "reckless or callous disregard for the plaintiff's rights" to support an award of punitive damages. *Smith v. Wade*, 461 U.S. 30, 51 (1983); *Fields v. Corizon Health, Inc.*, 490 F. App'x 174, 186 (11th Cir. 2012). Here, based on the previous discussion, the record does not support the assertion that Defendants acted with reckless or callous disregard for Plaintiff's rights. Therefore, punitive damages are inappropriate.

### VI. Recommendation

Based on the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, ECF No. 130, should be **GRANTED**, all pending motions terminated, and the case closed.

**IN CHAMBERS**, at Gainesville, Florida, this 7th day of October, 2015.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.